Filed 8/14/20  P. v. Sanchez CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JULIO ANGELO SANCHEZ,<br><br>    Defendant and Appellant. | H047621<br>(Santa Clara County<br>Super. Ct. No. C1653125) |

Pursuant to a plea agreement, defendant Julio Angelo Sanchez pleaded no contest to one count of rape by force (Pen. Code, § 261, subd. (a)(2)),[1] and one count of rape by an intoxicating substance (*id*. subd. (a)(3)).  Sanchez was sentenced to a total term of 12 years in prison.

We appointed counsel to represent Sanchez in this court.  Appointed counsel filed an opening brief which states the case and the facts but raises no specific issues.  We notified Sanchez of his right to submit written argument in his own behalf within 30 days.  That period has elapsed, and we have received no written argument from Sanchez.

I.    **FACTUAL AND PROCEDURAL BACKGROUND**[2]

On October 28, 2016, Jane Doe 1 went to dinner with some friends in Campbell but later that evening, she ended up at a bar by herself.  She was extremely intoxicated

---

[1] Unspecified statutory references are to the Penal Code.

[2] Because Sanchez entered into a negotiated plea agreement, we derive the facts relating to his offenses from the probation report, the testimony presented at the preliminary hearing and other documents included in the record on appeal.

and the only thing she remembered from the rest of the evening was walking past the bouncers into the bar. She awoke the next morning, with a man she did not recognize on top of her with his penis in her vagina. She was naked and lying on a bed and, at first, thought she might be in her own apartment but quickly realized she was not. She told the man, later identified as Sanchez, to get off. He replied, " 'Hold on, hold on,' " and was holding her down by the shoulders. She felt "wet stuff" on her and she jumped up and wiped her body off with the blanket. She was angry, asking what was going on and where she was. She grabbed her clothes and got dressed. Because she was scared and wanted to get home safely, she realized she should not yell at or argue with Sanchez. Sanchez told her that someone threw her in the back of his taxi the night before.

Sanchez asked her to stay, but Jane Doe 1 told him she needed to get home and that she had a boyfriend. When she asked Sanchez for her phone, he told her he would drive her home. Sanchez drove her to her apartment complex, but she did not want him to know exactly where she lived so she had him drop her off in front of the complex. She ran to her apartment, changed her clothes, and called her mother and her brother to tell them what happened. She went to the hospital that morning and reported that she had been raped.

Campbell police officers responded to Kaiser Santa Clara on a report of a woman who came to the emergency room saying she had been raped in Campbell. Officers spoke with Jane Doe 1, who initially said she did not want to involve the police and did not know anything about the perpetrator other than that he was a cabdriver. Jane Doe 1 reported that she woke up to a man having sex with her and he drove her home in a cab afterwards. Jane Doe 1 then agreed to a sexual assault response team (SART) exam, her clothes were collected, and samples were taken from her. Jane Doe 1 later informed police that she believed she left a pair of black, fingerless gloves with a skeleton pattern on them at the perpetrator's apartment.

2

On November 9, 2016, officers went to the bar Jane Doe 1 reported going to and spoke to one of the bouncers. He remembered Jane Doe 1 was very intoxicated, so he hailed a cab to drive her home. He gave the cab driver her ID for her address. When officers viewed surveillance video from the bar, they saw Jane Doe 1 getting into a taxi and officers were able to discern the license plate of the vehicle.

Officers executed a search warrant on Sanchez's apartment on November 16, 2016. In the course of the search, officers located Sanchez's driver's license and mail addressed to him in a dresser. They also found a pair of black fingerless gloves with a skeleton pattern on a plastic tub near a bed, along with a condom wrapper and unused condoms.

The officers investigated whether Sanchez had previously been stopped while driving his cab. This investigation led them to Jane Doe 2, and on November 21, 2016, police spoke to her by telephone. Jane Doe 2 said she dated Sanchez briefly a few months earlier but did not know much about him. When she asked why they were interested in Sanchez, they told her he was a suspect in a sexual assault investigation. Jane Doe 2 asked repeatedly about the well-being of the victim in that assault, but officers could not provide her with more information as the investigation was ongoing.

Jane Doe 2 talked with police later that day and informed them that she had been sexually assaulted by Sanchez as well. She said she first met him at his cousin's house in September 2016. On that night, she said Sanchez was drunk and indicated he was going to drive himself home. She agreed to follow him home in her car because she was concerned for his safety. After they arrived, she went inside his apartment and they had consensual intercourse on the bed in the living room.

After that evening, Jane Doe 2 went out with Sanchez on two other occasions to get something to eat. They did not kiss or have any sexual contact. Jane Doe 2 went to Sanchez's apartment again after he asked her to come over to drink and watch movies.

3

She said she drank one or two tall cans of beer and fell asleep on the bed in the living room.

Jane Doe 2 woke up and Sanchez was trying to take off her pants. She was still feeling really sleepy and buzzed, but she told him to stop. Sanchez put his finger over his mouth telling her " 'shh.' " He pulled her pants down. Jane Doe 2 kept moving, trying to prevent him from spreading her legs but he used his knee to force them open. Sanchez held her down and put a hand over her mouth. Jane Doe 2 kept telling him to stop, but he inserted his penis into her vagina. After he ejaculated, he got off her. Jane Doe 2 "couldn't get up," because she was "intoxicated and . . . just wanted to sleep." She told Sanchez to never touch her again and fell back asleep.

When Jane Doe 2 woke up the next morning, she was angry and just wanted to get her clothes and leave. Sanchez acted as if nothing had happened, asking if she wanted a cup of coffee before she left. Jane Doe 2 saw Sanchez again one more time, but she was too upset about what had happened to continue being around him.

Sanchez was initially charged by complaint filed on December 19, 2016, with two counts of rape by an intoxicating substance (Jane Does 1 & 2) (§ 261, subd. (a)(3); counts 1, 6); rape of an unconscious victim (Jane Doe 1) (§ 261, subd. (a)(4); count 2); sexual penetration of an intoxicated victim (Jane Doe 2) (§ 289, subd. (e); count 3); sexual penetration of an unconscious victim (Jane Doe 2) (§ 289, subd. (d); count 4); rape by force (Jane Doe 2) (§ 261, subd. (a)(2); count 5). After arraignment but before the preliminary hearing, the proceedings were suspended after the superior court declared a doubt about Sanchez's competence. A psychiatrist and psychologist were appointed to evaluate Sanchez's competence to stand trial. Both opined that Sanchez was competent to stand trial, although he was diagnosed with an "unspecified neurocognitive disorder" or a "learning disability." In March 2018, based on those evaluations, the court found Sanchez competent and reinstated the criminal proceedings.

4

Following the preliminary hearing, Sanchez was charged by information with kidnapping to commit rape, with an allegation that the victim (Jane Doe 1) suffered bodily harm (§ 209, subd. (b)(1); count 1); rape by force, with a "one strike" allegation that Sanchez kidnapped the victim (Jane Doe 1) and committed qualifying sex offenses against more than one victim (§§ 261, subd. (a)(2), 667.61, subds. (a), (e); count 2); rape of an unconscious person (Jane Doe 1) (§ 261, subd. (a)(4); count 3); two counts of rape by an intoxicating substance (Jane Does 1 & 2) (§ 261, subd. (a)(3); counts 4, 6); and rape by force (Jane Doe 2), with a "one strike" allegation that Sanchez committed qualifying sex offenses against more than one victim (§§ 261, subd. (a)(2), 667.61, subds. (b), (e); count 5).

In August 2018, Sanchez filed a section 995 motion to dismiss counts 1 and 2. Following a hearing, the trial court struck the bodily harm allegation in count 1, but otherwise denied the motion.

In a negotiated disposition, Sanchez pleaded no contest to counts 2 and 6, without admitting any enhancement allegations, in exchange for dismissal of the remaining counts and enhancements and a prison sentence of between nine and 16 years.

At sentencing, the trial court imposed the middle term of six years on count 2 and a consecutive middle term of six years on count 6, for a total term of 12 years.[3] Sanchez was awarded 1,048 days of credits, consisting of 912 custody credits plus 136 days pursuant to section 2933.1. The trial court imposed a restitution fine of $300 (§ 1202.4, subd. (b)), a parole revocation fund fine of $300 (suspended unless parole is revoked) (§ 1202.45), and a $300 fine plus a penalty assessment of $930 (§ 290.3). The court stayed all these fines and the penalty assessment pending a determination on Sanchez's ability to pay. In addition, the trial court waived additional fines and fees, including the

_____

[3] The court imposed a full-term consecutive sentence pursuant to section 667.6, subdivision (d) because the offenses involved separate victims and separate criminal conduct.

5

court operations assessment (§ 1465.8) and criminal conviction assessment (Gov. Code, § 70373).

Sanchez timely appealed.

Pursuant to *People v. Wende* (1979) 25 Cal.3d 436 and *People v. Kelly* (2006) 40 Cal.4th 106, we have reviewed the whole record and have concluded there is no arguable issue on appeal other than the correction of a clerical error in the abstract of judgment.

Our review of the record reveals that the fine and penalty assessment imposed pursuant to section 290.3 which was orally pronounced by the court at sentencing is reflected in the minute order but does not appear in the abstract of judgment. Although the fine and penalty assessment was stayed pending a determination on Sanchez's ability to pay, we will order the clerk of the court to correct that clerical error. (*People v. Mitchell* (2001) 26 Cal.4th 181, 185.)

## II.    DISPOSITION

The judgment is affirmed.

The clerk of the court is directed to prepare a corrected abstract of judgment to reflect the $300 fine and $930 penalty assessment imposed pursuant to Penal Code section 290.3 but stayed pending a determination of defendant's ability to pay. A certified copy of the corrected abstract of judgment shall be forwarded to the Department of Corrections and Rehabilitation.

_____
                                                Premo, Acting P.J.


WE CONCUR:




_____
            Elia, J.




_____
            Grover, J.




People v. Sanchez
H047621